Frances Arroyo
Los Angeles Legal Advocates
1025 W 190th St
Suite 400
Gardena, CA 90248

Natalie Renee Shepherd
Of Counsel
(805) 907-5309
NatalieReneeShepherd@gmail.com

*Attorneys for Petitioner*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

GEOVANNY RAMIREZ LOPEZ,

               Petitioner,

vs.

FERETI SEMAIA, Warden of the GEO
Group Adelanto ICE Processing Center,

David Marin, Director of los angeles
Field Office, U.S. Immigration and Customs
Enforcement;

Kristi Noem, Secretary of the U.S.
Department of Homeland Security; and

pam bondi, Attorney General of the
United States,

in their official capacities,

               Respondents

PETITIONER'S NOTICE OF MOTION AND
EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION
FOR PRELIMINARY INJUNCTION

POINTS AND AUTHORITIES IN SUPPORT
OF EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER AND MOTION FOR
PRELIMINARY INJUNCTION

**Case No. 5:26-cv-01214**

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER
1

**NOTICE OF MOTION**

Petitioner Geovanny Ramirez Lopez respectfully applies to this Court for an ex parte Temporary Restraining Order enjoining Respondents—the Department of Homeland Security ("DHS"), the Warden of the Adelanto ICE Processing Center, the Los Angeles Field Office Director of ICE Enforcement and Removal Operations, and the Attorney General of the United States—from: (1) Transferring Petitioner out of this District or re-arresting or re-detaining him on the same factual or legal basis underlying his current custody while this action is pending; (2) Continuing to detain Petitioner under 8 U.S.C. § 1225(b), where his custody is governed by 8 U.S.C. § 1226(a); and (3) Ordering Petitioner's immediate release from custody, or, in the alternative, requiring Respondents to provide an individualized custody hearing under 8 U.S.C. § 1226(a) within seven (7) days, at which the Government must demonstrate by clear and convincing evidence that detention is necessary and that no less restrictive conditions of supervision would reasonably assure appearance and public safety.

DATED: March 19, 2026

Respectfully submitted,

Frances Arroyo
Los Angeles Legal Advocates
1025 W 190th St
Suite 400
Gardena, CA 90248

Natalie Renee Shepherd
Of Counsel
(805) 907-5309
NatalieReneeShepherd@gmail.com

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

2

**INTRODUCTION**

1.      This case arises from the ongoing unlawful civil detention of a long-time interior resident of the United States under a statutory regime that does not apply to him. Petitioner Geovanny Ramirez Lopez has lived and worked in the United States for nearly two decades. He was arrested outside his workplace in Los Angeles, California after decades of continuous residence in this country—not at the border, not while seeking admission, and not pursuant to any individualized determination that detention was necessary. Nevertheless, the Department of Homeland Security has classified him as an "applicant for admission" and subjected him to mandatory detention under 8 U.S.C. § 1225(b), categorically denying him meaningful access to release on bond.

2.      That classification is not a technical error. It extinguishes the only statutory mechanism that authorizes release and individualized custody review. Section 1226(a)—the provision Congress designed to govern detention of individuals already present in the United States—preserves discretion precisely to prevent unnecessary confinement. By invoking § 1225(b) against a decades-long interior resident, DHS has converted discretionary civil detention into mandatory incarceration without process, in violation of the Immigration and Nationality Act, the Administrative Procedure Act, and the Fifth Amendment.

3.      The consequences are immediate and irreparable. Mr. Ramirez Lopez has no criminal history and has lived peacefully in the United States for nearly two decades. He is married to a lawful permanent resident, has a pending I-130 immigrant petition filed on his behalf, and has established strong family and community ties, including regular church attendance with his spouse. Each additional day of detention inflicts a continuing deprivation of liberty and escalating harm to his family and community—harm that cannot be remedied retroactively.

4.      This Court's intervention is therefore required now. Where the government has no lawful authority to detain and has foreclosed any mechanism to test the necessity of confinement,

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER
3

the detention itself is unconstitutional. Habeas relief exists to stop precisely this kind of structural liberty violation before it hardens into prolonged, arbitrary incarceration. Geovanny Ramirez Lopez is a 37-year-old citizen of Mexico who entered the United States on May 5, 2006, which was his first and only entry. Since then he has resided continuously in the United States. For nearly two decades, Mr. Ramirez Lopez has built his life here with his wife and community. He regularly attends church with his spouse and has maintained strong ties to his local community.

<strong>STATEMENT OF FACTS</strong>

5.      Geovanny Ramirez Lopez is a 37-year-old Mexican national who has lived and worked in the United States for nearly two decades. He first entered the United States on May 5, 2006, which was his first and only entry into the country. Since that time, he has resided continuously in this country. For many years, Mr. Ramirez Lopez has built his life here— working steadily, supporting his family, and becoming a member of his community.

6.      Mr. Ramirez Lopez has no criminal history. He has worked to support himself and his family and has maintained strong ties to his community. He regularly attends church with his spouse and remains closely connected to his local community.

7.      Mr. Ramirez Lopez is married to a lawful permanent resident, and an I-130 immigrant petition has been filed on his behalf, which remains pending.

8.      On the morning of January 24, 2026, as Mr. Ramirez Lopez was outside his workplace located at 245 W. 135th Street in Los Angeles, California, cleaning outside the building at the request of his employer, a vehicle approached him and two men exited. The individuals did not initially identify themselves or display identification before grabbing Mr. Ramirez Lopez and forcing him to the ground while placing him under arrest. Mr. Ramirez Lopez attempted to call his wife to inform her that he was being arrested, but the agents took his phone from him and threw it to the ground, preventing him from continuing communication with his spouse. During the arrest, one of the agents placed his foot on Mr. Ramirez Lopez's head

while he was lying on the ground. Another agent instructed him to stop because Mr. Ramirez Lopez was not resisting arrest, after which the agent removed his foot. Mr. Ramirez Lopez sustained an injury to his right elbow when he was thrown to the ground and later required medical attention for the injury.

9. Mr. Ramirez Lopez was then transported in a vehicle to another location, where the agents detained him for approximately two hours while waiting to pick up additional detainees, before eventually being transported to the Adelanto ICE Processing Center, where he remains detained.

10. The Department of Homeland Security subsequently issued a Notice to Appear placing Mr. Ramirez Lopez in removal proceedings under § 240 of the Immigration and Nationality Act and charging him as an individual present without admission or parole.

11. Mr. Ramirez Lopez was not apprehended at a port of entry. He was not treated as an arriving alien. Instead, he was arrested outside his workplace after many years of residence in the interior of the United States. Despite these circumstances, DHS is treating Mr. Ramirez Lopez as subject to mandatory detention under 8 U.S.C. § 1225(b), rendering him categorically ineligible for release on bond.

12. Mr. Ramirez Lopez is not a recent border crosser. He is not an arriving alien. He is a longtime interior resident who has lived in this country for nearly two decades. Yet he remains detained without bond under a statutory provision that does not reflect his circumstances.

13. Mr. Ramirez Lopez requested a custody redetermination pursuant to 8 C.F.R. § 1236, but the Immigration Judge denied the request, concluding that the court lacked jurisdiction to consider bond.

## LEGAL STANDARD

14. Petitioner Geovanny Ramirez Lopez is entitled to a temporary restraining order if he establishes that he is "likely to succeed on the merits, . . . likely to suffer irreparable harm in

the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical").

15.    Even if Petitioner does not show a likelihood of success on the merits, the Court may still grant a temporary restraining order if he raises "serious questions" as to the merits of his claims, the balance of hardships tips "sharply" in his favor, and the remaining equitable factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

16.    As set forth below, Petitioner overwhelmingly satisfies these standards.

## ARGUMENT

### PETITIONER RAMIREZ LOPEZ WARRANTS A
### TEMPORARY RESTRAINING ORDER

17.    A temporary restraining order should issue if "immediate and irreparable injury, loss, or irreversible damage will result" absent relief. Fed. R. Civ. P. 65(b). The purpose is to prevent irreparable harm before the Court can hold a preliminary-injunction hearing. *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974). Here, without intervention, Mr. Ramirez Lopez will remain in unlawful custody—detained under a statutory regime that does not apply to him and without any individualized custody determination by a neutral decisionmaker—in violation of the INA and the Due Process Clause.

18.    Mr. Ramirez Lopez's detention epitomizes the very constitutional harm the Fifth Amendment forbids: the arbitrary imprisonment of a long-time interior resident who poses no danger, no flight risk, and no reason whatsoever to be jailed. He was arrested outside his workplace in Los Angeles, California after nearly two decades of peaceful residence in the United States and was abruptly separated from the life he has built with his wife and community. His detention has disrupted the stability of his family and community ties and continues to inflict

a serious deprivation of liberty. These are precisely the human consequences the Constitution guards against when it requires individualized custody review before liberty is taken away.

19. Recent decisions in this District confirm that long-time interior residents may not be detained under § 1225(b) and are instead entitled to individualized custody review under § 1226(a). Courts in the Central District of California have repeatedly rejected DHS's attempt to treat interior arrests as "applicants for admission" subject to mandatory detention. See, e.g., *Garcia Duarte v. Santacruz*, No. 5:25-cv-03319-SPG-KES, 2025 WL 4231640 (C.D. Cal. Dec. 23, 2025) (granting TRO and holding that a long-term interior resident arrested within the United States must be detained under § 1226(a) and therefore entitled to a bond hearing); *Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429 (C.D. Cal. Dec. 23, 2025) (granting TRO and rejecting the government's reliance on § 1225(b) for a noncitizen arrested within the United States after decades of residence); *Diaz Orzuna v. Noem*, No. CV 25-10380-KK-ASx, 2025 WL 3640619 (C.D. Cal. Oct. 31, 2025) (same); *Ruiz Yarleque v. Noem*, No. 5:25-CV-02836-MEMF-SP, 2025 WL 3043936, at *1 (C.D. Cal. Oct. 31, 2025) (granting TRO requiring release or a § 1226(a) bond hearing where DHS detained a long-term resident as a purported § 1225(b) detainee); *Mosqueda v. Noem*, No. 5:25-CV-02304-CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025) (granting TRO and explaining that § 1225 applies to individuals seeking admission at the border, not to noncitizens arrested within the United States after years of residence). Those holdings apply squarely here, where DHS has detained a decades-long interior resident with no criminal history under § 1225(b) and foreclosed any mechanism for individualized custody review.

## I.    PETITIONER RAMIREZ LOPEZ IS LIKELY TO SUCCEED ON HIS STATUTORY CLAIM: § 1226(A) GOVERNS; § 1225(B) DOES NOT

20. Mr. Ramirez Lopez's detention is unlawful because it is governed by 8 U.S.C. § 1226(a), not § 1225(b). He was arrested in the interior of the United States after living in this country for nearly two decades. Mr. Ramirez Lopez first entered the United States in 2006 and

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

has lived and worked here ever since, building deep family and community ties in California. His detention under the "arriving alien" provision of § 1225(b) contradicts both the text and structure of the Immigration and Nationality Act and the growing body of decisions rejecting the government's attempt to apply § 1225 to long-settled interior residents.

21. The Supreme Court has already made clear which statute governs detention of long-time residents like Mr. Ramirez Lopez. In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Court explained that § 1226(a) and (c) "authorize[] the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings," while § 1225(b)(1) and (b)(2) "apply primarily to [noncitizens] seeking entry into the United States." *Id.* at 289, 297 (emphasis added). Despite this clear statutory distinction, DHS has attempted to stretch § 1225(b) to reach individuals long settled in the interior, converting discretionary civil detention into mandatory incarceration by bureaucratic relabeling. Courts across the country— and repeatedly in this District—have rejected that interpretation.

22. Recent decisions in the Central District of California have consistently reaffirmed that § 1226(a)—not § 1225(b)—governs detention of individuals arrested within the United States after years of residence. In *Garcia Duarte v. Santacruz*, No. 5:25-cv-03319-SPG-KES, 2025 WL 4231640 (C.D. Cal. Dec. 23, 2025), the court granted a TRO requiring a bond hearing after concluding that a noncitizen arrested in the interior could not be treated as a § 1225(b) detainee. The same result followed in *Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429 (C.D. Cal. Dec. 23, 2025), where the court rejected the government's attempt to apply § 1225 to a long-time interior resident and ordered relief under § 1226(a). Similarly, in *Diaz Orzuna v. Noem*, No. CV 25-10380-KK-ASx, 2025 WL 3640619 (C.D. Cal. Oct. 31, 2025), the court held that DHS may not transform an interior arrest into mandatory detention under § 1225(b). And in *Ruiz Yarleque v. Noem*, No. 5:25-CV-02836-MEMF-SP, 2025 WL 3043936, at *7–8 (C.D. Cal. Oct. 31, 2025), the court reaffirmed that the statutory distinction recognized in *Jennings v. Rodriguez* must be respected and declined to "look past"

Congress's decision to treat interior detention under § 1226(a). Confronted with materially identical facts, courts in this District—including nearly every judge to consider the issue—have reached the same conclusion: § 1225(b) does not govern detention of individuals arrested in the interior of the United States after years of residence. See, e.g., *Benitez v. Noem*, No. 5:25-cv-02190-RGK-AS, ECF No. 11 (C.D. Cal. Aug. 26, 2025) (Klausner, J.); *Ding v. Janecka*, No. 5:25-CV-03184-DOC-JDE, 2025 WL 3453957 (C.D. Cal. Nov. 28, 2025) (Carter, J.); *Portillo v. Noem*, No. 5:25-cv-02892-JFW-PVC, ECF No. 8 (C.D. Cal. Oct. 31, 2025) (Walter, J.); *Helal v. Janecka*, No. 5:25-CV-02650-HDV-JC, 2025 WL 3190132 (C.D. Cal. Oct. 24, 2025) (Vera, J.); *Zecua v. Lyons*, No. 2:25-CV-09794-PDX, 2025 WL 3150680 (C.D. Cal. Oct. 17, 2025) (Valenzuela, J.); *Sandoval Hernandez v. Noem*, No. 5:25-CV-02563-FMO (AGR) (C.D. Cal. Oct. 9, 2025) (Olguin, J.); *Pop v. Noem*, No. 5:25-CV-02589-SSS-SSC, 2025 WL 3050095 (C.D. Cal. Oct. 3, 2025) (Sykes, J.); *Arrazola-Gonzalez v. Noem*, No. 5:25-CV-01789-ODW-DFM, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (Wright, J.); *Zavala v. Noem*, No. SA CV 25-2686-PA (DFMx), 2025 WL 3514086 (C.D. Cal. Dec. 4, 2025) (Anderson, J.); cf. *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025) (Wilson, J.). The same principle was articulated even earlier in *Mosqueda v. Noem*, No. 5:25-CV-02304-CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025), where the court granted a TRO requiring release or § 1226(a) bond hearings and held unequivocally that mandatory detention under § 1225(b) does not apply to interior arrests.

23.    In *Lazaro Maldonado Bautista et al. v. Santacruz*, the Central District of California certified a Rule 23(b)(2) class of noncitizens subjected to this exact detention regime—individuals apprehended in the interior, deemed "applicants for admission," and categorically denied bond eligibility based on DHS's interpretation of § 1225(b)(2)(A). The court recognized that DHS's classification practice operates uniformly, binds immigration judges, and systematically deprives noncitizens of the custody determinations Congress preserved in § 1226(a). This Court therefore confronts not an isolated misapplication of the

statute, but an entrenched agency policy already adjudicated as suitable for classwide relief. *See* Order Granting Motion for Class Certification at 1–2, *Lazaro Maldonado Bautista et al. v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Nov. 25, 2025) (certifying a Rule 23(b)(2) "Bond Eligible Class" of noncitizens apprehended in the interior and denied bond eligibility under § 1225(b)(2)(A) pursuant to DHS policy).

24. That unanimity extends beyond this Circuit. Courts across the country—applying basic principles of statutory construction—have consistently held that § 1225(b)(2)(A) applies only to those "seeking admission" in the active, border-inspection sense, not to individuals arrested years after entry. *See, e.g., Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429, at *3 (C.D. Cal. Dec. 23, 2025); *Estrada v. Lyons*, No. CV 25-11002-KK-KSX, 2025 WL 3438562, at *4 (C.D. Cal. Nov. 26, 2025); *Martinez v. Hyde*, No. 1:25-cv-11613-BEM, 2025 WL 2084238, at *6* (D. Mass. July 24, 2025); *Lopez Benitez v. Francis*, No. 25-Civ-5937, 2025 WL 2371588, at *5–7* (S.D.N.Y. Aug. 13, 2025); *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *4* (N.D. Cal. Sept. 18, 2025); *Maldonado Vazquez*, 2025 WL 2676082, at *15–16.* That conclusion has been echoed by nearly every district to consider the issue, including *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8* (D. Mass. July 7, 2025); *Vasquez Garcia v. Noem*, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Benitez v. Noem*, No. 5:25-cv-02190 (C.D. Cal. Aug. 26, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Aguilar Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa*, No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, 2025 WL

2349133 (D. Ariz. Aug. 13, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM, at *13* (C.D. Cal. July 28, 2025); and *Lepe v. Andrews*, No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *4* (E.D. Cal. Sept. 23, 2025). As the Western District of Washington summarized, "Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice." *Rodriguez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499, at *9* (W.D. Wash. Sept. 30, 2025). Not one court has endorsed DHS's expansive § 1225 theory.

25.     That consistent line of authority applies squarely here. Mr. Ramirez Lopez was arrested in the interior of the United States after living here since 2006— nearly two decades. He has spent the vast majority of his adult life in this country, working steadily and building a stable life in his community. Nothing about his arrest or immigration posture resembles the border-inspection context Congress addressed in § 1225(b). Applying that statute to a decades-long resident like Mr. Ramirez Lopez erases the statutory distinction Congress deliberately drew between individuals seeking admission at the border and those already living within the United States. The INA does not authorize such detention, and the government's contrary interpretation cannot be reconciled with the statutory text, Supreme Court precedent, or the uniform decisions of courts in this District.

## II.     PETITIONER RAMIREZ LOPEZ IS LIKELY TO SUCCEED ON HIS INDEPENDENT DUE PROCESS CLAIM

26.     The Due Process Clause protects all "persons" within the United States, regardless of status, from arbitrary deprivation of liberty. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Supreme Court has long recognized that conditional liberty—even when revocable—carries a protected interest that cannot be withdrawn without adequate process. *Morrissey v. Brewer*, 408 U.S. 471, 482–83 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973).

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

11

27.    In the immigration context, the Ninth Circuit has emphasized that "freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). That fundamental liberty interest is now being denied to Mr. Ramirez Lopez—an individual who has lived and worked in the United States since 2006—without any individualized determination that detention is necessary.

28.    Recent decisions within the Central District of California reaffirm that detention of long-settled interior residents under § 1225(b), without access to an individualized custody determination, raises serious due process concerns and supports immediate injunctive relief. See *Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429, at *1–3 (C.D. Cal. Dec. 23, 2025) (finding likelihood of success—or at minimum "serious questions"— where long-term interior resident was detained under § 1225(b) rather than § 1226(a)); *Estrada v. Lyons*, No. CV 25-11002-KK-KSX, 2025 WL 3438562, at *3–4 (C.D. Cal. Nov. 26, 2025) (reaffirming that § 1226(a), not § 1225(b), governs detention of noncitizens arrested in the interior and finding likelihood of success on the merits); *Eloy Marin Saucedo v. Noem*, No. 2:25-CV-11051-ODW (RAOx), 2025 WL 4056010, at *2–3 (C.D. Cal. Nov. 20, 2025) (granting TRO where agency policy treated a long-term resident as an "applicant for admission" under § 1225(b)). See also *Ruiz Yarleque v. Noem*, No. 5:25-cv-02836-MEMF-SP, 2025 WL 3043936, at *8 (C.D. Cal. Oct. 31, 2025) ("Petitioner's continued detention under § 1225(b)(2) without a bond hearing constitutes an ongoing deprivation of liberty that due process does not tolerate."); *Garcia Duarte v. Santacruz*, 2025 WL 4231640 (C.D. Cal. Dec. 23, 2025) (granting TRO where DHS detained interior arrestee as § 1225 detainee); *Diaz Orzuna v. Noem*, 2025 WL 3640619 (C.D. Cal. Oct. 31, 2025) (same). Courts outside this District have reached the same conclusion. See *Arce-Cervera v. Noem*, No. 2:25-cv-01895-RFB-NJK, 2025 WL 3017866, at *6 (D. Nev. Oct. 28, 2025) (ordering bond hearing within seven days or immediate release).

29.    These rulings reflect the same constitutional principle articulated by the Supreme Court: the Due Process Clause forbids detention that is arbitrary or purposeless when less

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

12

restrictive means would suffice. *Zadvydas*, 533 U.S. at 690. Civil immigration detention is permissible only to serve legitimate governmental interests—namely preventing danger to the community or ensuring appearance at proceedings. When detention is imposed without any individualized determination that those interests are implicated, it becomes constitutionally suspect.

30.    Applying *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the balance decisively favors pre-deprivation process here:

**The Profound Liberty and Community Interests at Stake**

31.    The private liberty interests at stake here are extraordinary. Mr. Ramirez Lopez has lived in the United States since 2006—nearly two decades. He has spent the vast majority of his adult life in this country, building his life with his wife and community in Southern California. He regularly attends church with his spouse and has maintained strong ties to his local community.

32.    His years of residence have allowed him to form the kinds of ties that courts repeatedly recognize as placing an individual's liberty interest at the highest end of the constitutional scale. *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017). Mr. Ramirez Lopez is not a recent entrant or someone passing through the United States; he is a long-time member of the community whose adult life is rooted here.

33.    The evidence submitted on his behalf reflects the depth of those ties. Mr. Ramirez Lopez is married to a lawful permanent resident, has a pending I-130 immigrant petition filed on his behalf, and regularly attends church with his spouse. These facts reflect a stable and longstanding life in the United States.

34.    These facts reflect a consistent picture: Mr. Ramirez Lopez is a long-time interior resident whose life in this country has been defined by stability, family ties, and community

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

13

connection. Over nearly two decades, he has become precisely the type of community member whose liberty interests the Constitution most strongly protects.

35.     Courts confronting materially similar circumstances have repeatedly recognized the gravity of those interests. See *Ruiz Yarleque v. Noem*, No. 5:25-cv-02836-MEMF-SP, 2025 WL 3043936, at *8 (C.D. Cal. Oct. 31, 2025) ("Petitioner's continued detention under § 1225(b)(2) without a bond hearing constitutes an ongoing deprivation of liberty that due process does not tolerate."); *Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429, at *3 (C.D. Cal. Dec. 23, 2025) (finding likelihood of success where long-term resident arrested in the interior was detained under § 1225 rather than § 1226(a)); *Estrada v. Lyons*, No. CV 25-11002-KK-KSX, 2025 WL 3438562, at *4 (C.D. Cal. Nov. 26, 2025) (same).

36.     When an individual who has lived in the United States for nearly two decades is abruptly taken into civil detention without any individualized determination of necessity, the deprivation extends far beyond physical confinement. The Supreme Court has repeatedly recognized that both freedom from physical restraint and the preservation of family and community relationships are among the "oldest and most fundamental" liberty interests protected by the Constitution. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

**Risk of Erroneous Deprivation**

37.     The risk of erroneous deprivation is equally severe here. Mr. Ramirez Lopez was not attempting to enter the United States, presenting himself for inspection, or seeking admission at a port of entry. He was arrested in the interior of the United States after nearly two decades of residence in this country. Yet DHS classified him as an "applicant for admission" under § 1225(b)(2)(A)—a designation historically reserved for individuals encountered at or near the border. That determination was not based on statutory text, congressional intent, or any individualized finding that Mr. Ramirez Lopez poses a danger or flight risk. Courts have repeatedly identified this mechanical misclassification as creating a systemic risk of erroneous

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

14

deprivation. *Menjivar Sanchez v. Wofford*, No. 1:25-CV-01208 (E.D. Cal. Oct. 17, 2025); *Garcia v. Noem*, No. 5:25-CV-02771-ODW, 2025 WL 2986672, at *5–6 (C.D. Cal. Oct. 22, 2025).

38.    Courts throughout this Circuit have emphasized that misclassification under § 1225(b)(2)(A)—without access to a bond hearing—poses an unacceptably high risk of unconstitutional detention. See *Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429, at *3 (C.D. Cal. Dec. 23, 2025); *Eloy Marin Saucedo v. Noem*, No. 2:25-CV-11051-ODW (RAOx), 2025 WL 4056010, at *3 (C.D. Cal. Nov. 20, 2025); *Estrada v. Lyons*, No. CV 25-11002-KK-KSX, 2025 WL 3438562, at *4 (C.D. Cal. Nov. 26, 2025); *Cordero Pelico v. Kaiser*, No. 25-CV-07286-EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025); *Naser Noori v. Larose*, No. 25-CV-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025); *Hernandez v. Wofford*, No. 1:25-CV-00986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025); *Hernandez Nieves v. Kaiser*, No. 25-CV-06921-LB, 2025 WL 2533110, at *4 (N.D. Cal. Sept. 3, 2025).

39.    A § 1226(a) bond hearing is the minimum process Congress contemplated for discretionary detention, but it does not cure the constitutional violation already occurring here. Mr. Ramirez Lopez is currently confined under a detention statute that does not apply to him and without any neutral adjudication of whether detention is necessary. Courts have recognized that while a bond hearing has significant value in ordinary § 1226(a) cases, it cannot legitimize ongoing custody that is unauthorized from the outset or restore liberty wrongfully taken. See *Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *Oliveros v. Kaiser*, 2025 WL 2677125, at *7; *Pinchi v. Kaiser*, No. 25-CV-05687, 2025 WL 2084921 (N.D. Cal. July 24, 2025). Where detention rests on an unlawful statutory classification and categorical denial of process, due process requires release—not merely a belated hearing.

**Government's Interest and Administrative Burden**

40.    The government's interest in detaining Mr. Ramirez Lopez without individualized process is negligible. Immigration detention is civil and "nonpunitive in purpose and effect," and

is constitutionally justified only where confinement is necessary to prevent flight or protect the public. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Neither rationale applies here. Mr. Ramirez Lopez is not detained pursuant to any individualized determination that he poses a danger or would fail to appear; he is confined solely because the government has categorically asserted that no adjudicator has authority to consider his release at all. Where detention is untethered from any legitimate regulatory purpose, the government's interest collapses.

41.   Mr. Ramirez Lopez is a 37-year-old longtime interior resident who has lived in the United States since 2006. For nearly two decades, he has built his life in this country with his wife and community. He has no criminal history, regularly attends church with his spouse, and has maintained strong ties to his local community.

42.   He was not arrested at the border, did not present himself for inspection, and was not transferred from criminal custody. Rather, he was taken into ICE custody in the interior of California after decades of residence in this country. The record reflects no individualized finding of dangerousness and no evidence suggesting that detention is necessary to secure his appearance. When detention serves no individualized purpose, the government's interest "carries little weight." *Maldonado Vazquez v. Feeley*, 2025 WL 2676082, at *21; *Lopez Benitez v. Francis*, No. 25-CV-5937 (DEH), 2025 WL 2371588, at *13 (S.D.N.Y. Aug. 13, 2025). The Ninth Circuit likewise recognizes that "when the government detains individuals it cannot justify as dangerous or likely to flee, it acts in excess of its lawful authority." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017).

43.   Nor can the government plausibly invoke administrative burden. Immigration courts routinely conduct § 1226(a) custody determinations, and courts have repeatedly rejected the notion that administrative convenience can justify ongoing constitutional violations. See *Cordero Pelico*, 2025 WL 2822876, at *6; *Baird v. Garland*, 81 F.4th 95, 104 (9th Cir. 2024) ("Courts cannot allow constitutional violations to persist merely because a remedy would intrude

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

16

on agency administration."). The government has no cognizable interest in avoiding procedures that ensure compliance with the Constitution.

44.     In short, the government gains nothing—legally, constitutionally, or practically—from continuing to detain Mr. Ramirez Lopez without lawful authority or process. The *Mathews* balance decisively favors him: his liberty and community interests are profound; the risk of erroneous deprivation under the government's categorical detention theory is substantial; and the government's countervailing interest is vanishingly small. Due process does not permit civil detention imposed without authority and without any meaningful opportunity to contest its necessity. Where, as here, detention is structurally unlawful from the outset, immediate release is the appropriate remedy.

45.     Courts confronting materially indistinguishable circumstances have reached the same conclusion and ordered release or narrowly cabined alternative relief. In *Roman v. Noem*, 2025 WL 2710211 (D. Nev. Sept. 23, 2025), the court held that detention of a long-time interior resident under § 1225(b)(2)(A) violated due process and ordered immediate release absent prompt corrective action. See also *Maldonado Vazquez v. Feeley*, No. 2:25-cv-01542-RFB-EJY (D. Nev. Sept. 17, 2025) (ordering immediate release); *Hernandez v. Wofford*, No. 1:25-CV-00986-KES-CDB (HC), 2025 WL 2420390, at *8 (E.D. Cal. Aug. 21, 2025) (granting TRO and ordering release where petitioner was unlawfully detained without authority); *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW (D. Nev. Oct. 14, 2025); *Carlos v. Noem*, No. 2:25-cv-01900-RFB-EJY (D. Nev. Oct. 10, 2025). As the court in *Roman* observed, district courts nationwide have consistently ordered release or prompt corrective relief where detention rests on the same unlawful § 1225 misclassification theory. See also *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Salazar v. Dedos*, No. 1:25-cv-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Kostak v. Trump*, No. 3:25-cv-01093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).

46.     The same relief is warranted here. Because Mr. Ramirez Lopez's detention is unauthorized and constitutionally infirm, this Court should order his immediate release. At a minimum, the Court should require a prompt § 1226(a) custody hearing at which the government bears the burden of proving, by clear and convincing evidence, that continued detention is necessary.

### III.    PETITIONER RAMIREZ LOPEZ WILL SUFFER IRREPARABLE HARM ABSENT A TRO

47.     Petitioner Ramirez Lopez will suffer irreparable harm if he remains detained after being deprived of his liberty and subjected to unlawful incarceration by immigration authorities without the constitutionally adequate process that this motion for a temporary restraining order seeks.

48.     It is well settled that "the deprivation of constitutional rights unquestionably constitutes irreparable injury," and that "deprivation of physical liberty by detention constitutes irreparable harm." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). As the Ninth Circuit has recognized in concrete terms, immigration detention inflicts "subpar medical and psychiatric care … economic burdens … and collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995.

49.     Such confinement occurs in "prison-like conditions." *Preap v. Johnson*, 831 F.3d 1193, 1195 (9th Cir. 2016). And as the Supreme Court has long observed, time spent in jail "has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); accord *Nat'l Ctr. for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984).

50.     Recent Central District decisions reinforce this conclusion in nearly identical circumstances. See *Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429, at *3 (C.D. Cal. Dec. 23, 2025) (finding irreparable harm from "continued deprivation

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

of liberty without due process" where petitioner detained under § 1225(b) rather than § 1226(a)); *Estrada v. Lyons*, No. CV 25-11002-KK-KSX, 2025 WL 3438562, at *4–5 (C.D. Cal. Nov. 26, 2025) (holding that continued detention without lawful authority or a bond hearing constitutes immediate and irreparable injury); *Eloy Marin Saucedo v. Noem*, No. 2:25-CV-11051-ODW (RAOx), 2025 WL 4056010, at *3 (C.D. Cal. Nov. 20, 2025) (same).

51.    The conditions of confinement further compound this harm. Mr. Ramirez Lopez is currently detained at the Adelanto ICE Processing Center, where courts within this Circuit have repeatedly recognized that detainees face immediate and irreparable injury when unlawfully confined. See *Monica Adriana Ruiz Yarleque v. Noem*, No. 5:25-cv-02836-MEMF-SP, 2025 WL 3043936, at *8 (C.D. Cal. Oct. 31, 2025) ("Deprivation of physical liberty by detention constitutes irreparable harm."); *Jose Enrique Arce-Cervera v. Noem*, No. 2:25-cv-01895-RFB-NJK, 2025 WL 3017866, at *6 (D. Nev. Oct. 28, 2025) (same). See also *Hernandez v. Wofford*, No. 1:25-cv-00986, 2025 WL 2420390, at *2 (E.D. Cal. Aug. 21, 2025) (petitioner detained at Adelanto "faces irreparable harm absent a temporary restraining order"); *Mosqueda v. Noem*, No. 5:25-cv-02304-CAS (BFM), 2025 WL 2591530, at *6 (C.D. Cal. Sept. 8, 2025) (petitioners "immediately and irreparably harmed" by continued deprivation of liberty without § 1226(a) bond hearings).

52.    These judicial findings are consistent with extensive public reporting and recent litigation documenting deteriorating conditions at the Adelanto ICE Processing Center. A June 2025 *Los Angeles Times* investigation described the facility as "unsanitary, overcrowded, and inhumane," reporting that detainee populations surged rapidly while staffing and medical resources lagged behind, leaving individuals without adequate medical care, clothing, or basic necessities. Congressional visitors and detention staff warned that detainees were forced to sleep on floors in common areas and wait days for clean clothing as overcrowding intensified.

53.    Advocacy organizations have similarly documented systemic deficiencies in the facility's operations. Disability Rights California's investigative report, *Inside the Adelanto ICE*

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

19

*Processing Center*, identified widespread failures in medical and mental health treatment, unsanitary living conditions, and excessive use of segregation, concluding that detainees face serious and ongoing health risks. These concerns have also been echoed in recent litigation: a coalition of immigrant rights organizations filed a federal lawsuit alleging that detainees at Adelanto have been subjected to inadequate medical care, insufficient food and water, and unsanitary conditions in an overcrowded facility holding nearly 2,000 individuals.[1]

54.     Public reporting further reflects mounting concerns about detainee safety at Adelanto. Investigations and news reports have documented deaths of individuals held in ICE custody after medical issues allegedly went untreated or inadequately addressed, prompting calls for investigation and reform. In light of these documented conditions—including overcrowding, medical neglect, and recent deaths connected to the facility—courts evaluating requests for emergency relief have recognized that continued detention at Adelanto may expose detainees to serious and irreparable harm.[2]

55.     Mr. Ramirez Lopez also faces a serious and imminent risk of transfer to a distant facility, which ICE may execute at any moment and without notice. Such a transfer would inflict distinct and irreparable harm by frustrating this Court's jurisdiction, severing counsel's access, impeding factual development, and further destabilizing his family and community ties. Courts nationwide have recognized that the threat of transfer during the pendency of a habeas petition itself constitutes irreparable harm. See *Lopez Benitez v. Francis*, 2025 WL 2371588, at *4–5 (S.D.N.Y. Aug. 13, 2025) (issuing TRO solely to prevent transfer because relocation would

---

[1] https://www.disabilityrightsca.org/drc-advocacy/investigations/inside-the-adelanto-ice-processing-center

[2] https://www.latimes.com/california/story/2025-06-20/unsanitary-overcrowded-and-inhumane-red-flags-raised-about-conditions-in-adelanto-detention-center
https://abc7.com/post/federal-lawsuit-alleges-poor-conditions-adelanto-ice-processing-center/18480494/
https://abc7.com/post/alberto-gutierrez-reyes-westlake-dies-ice-custody-adelanto-facility-according-la-councilmember-eunisses-hernandez/18672280/
https://www.dailynews.com/2026/03/11/second-reported-death-connected-to-ice-detention-facility-in-adelanto-in-last-2-weeks/
https://calmatters.org/justice/2026/03/san-diego-otay-mesa-lawsuit/

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

20

hinder meaningful judicial review); *Arostegui-Maldonado v. Baltazar*, 2025 WL 2280357, at *3 (D. Colo. Aug. 8, 2025); *Escalante v. Bondi*, No. 25-cv-1013, 2025 WL 2212104, at *6 (D. Minn. June 31, 2025).

56.    Within this Circuit, courts confronting identical § 1225(b) misclassification cases have repeatedly enjoined transfer as necessary to preserve judicial authority. See *Mosqueda*, 2025 WL 2591530, at *5–6 (granting TRO barring transfer because relocation would "severely impede counsel's access and frustrate the Court's ability to resolve the merits"); *Ruiz Yarleque*, 2025 WL 3043936, at *7 (same).

57.    Because Mr. Ramirez Lopez's continued detention—and the looming risk of transfer—impose ongoing injuries that no later order could repair, he will suffer irreparable harm absent immediate injunctive relief. This factor therefore weighs overwhelmingly in favor of a temporary restraining order requiring his release and barring transfer pending resolution of this Court's review.

## IV.    THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR GRANTING A TRO

58.    The final *Winter* factors—the balance of equities and the public interest—merge when the Government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Although the Government has a general interest in enforcing the immigration laws, that interest "is not furthered by allowing violations of federal law to continue." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); accord *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (recognizing that neither equity nor the public interest is served by unlawful agency action).

59.    Here, those considerations decisively favor granting a temporary restraining order. Courts within this Circuit have repeatedly held that "the public interest is best served by ensuring that government agencies act within the bounds of the law." *Ruiz Yarleque v. Noem*, No. 5:25-cv-02836-MEMF-SP, 2025 WL 3043936, at *8 (C.D. Cal. Oct. 31, 2025). Where the government's detention authority is lacking, enjoining unlawful confinement vindicates—not

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

21

undermines—the integrity of the immigration system. See also *Arce-Cervera v. Noem*, No. 2:25-cv-01895-RFB-NJK, 2025 WL 3017866, at *7 (D. Nev. Oct. 28, 2025) ("Equitable relief is warranted where continued detention contravenes statutory and constitutional guarantees.").

60.     Mr. Ramirez Lopez's continued detention advances no legitimate governmental interest. He is a 37-year-old man who has lived in the United States since 2006 and built his adult life in this country with his wife and community. He regularly attends church with his spouse, has maintained strong local ties, and has no criminal history. He was apprehended in the interior of the United States after nearly two decades of residence, not at the border, and the government has made no individualized finding that he poses a danger to the community or would fail to appear for immigration proceedings. Preventing the government from continuing to detain such an individual under an inapplicable mandatory-detention framework therefore advances—rather than frustrates—lawful immigration enforcement.

61.     Recent Central District decisions confirm that conclusion in materially indistinguishable circumstances. See *Garcia Duarte v. Santacruz*, No. 5:25-cv-03319-SPG-KES, 2025 WL 4231640, at *5 (C.D. Cal. Dec. 23, 2025) (granting TRO and emphasizing that continued detention under § 1225 for an interior arrestee lacked statutory authority); *Araujo-Contreras v. Janecka*, No. EDCV 25-03442-KK-MBK, 2025 WL 3771429, at *3–4 (C.D. Cal. Dec. 23, 2025) (holding balance of equities and public interest favored TRO where petitioner was unlawfully detained under § 1225(b) rather than § 1226(a)); *Estrada v. Lyons*, No. CV 25-11002-KK-KSX, 2025 WL 3438562, at *5 (C.D. Cal. Nov. 26, 2025) (same; emphasizing that the government has no equitable interest in continuing detention it lacks statutory authority to impose); *Eloy Marin Saucedo v. Noem*, No. 2:25-CV-11051-ODW (RAOx), 2025 WL 4056010, at *3 (C.D. Cal. Nov. 20, 2025) (finding equities favored petitioner because "[t]here is no public interest in the continued enforcement of an unlawful detention scheme"); *Mosqueda v. Noem*, No. 5:25-cv-02304-CAS (BFM), 2025 WL 2591530, at *6 (C.D. Cal. Sept. 8, 2025) (granting

TRO and emphasizing that the public interest favors halting detention imposed without statutory authority).

62.     Releasing Mr. Ramirez Lopez—or, at minimum, halting detention shown to be unauthorized—promotes public confidence that immigration enforcement operates within constitutional and statutory bounds. Each day of confinement imposes an irretrievable human cost on Mr. Ramirez Lopez, while the burden on the government of correcting its legal error is negligible. Our system does not permit agencies to act unlawfully even in pursuit of desirable ends. *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021). Upholding the rule of law is itself a matter of profound public interest, and that interest is best served by halting an unlawful detention that should never have occurred.

**CONCLUSION**

63.     For the reasons set forth above, Petitioner respectfully requests that this Court grant his Ex Parte Application for a Temporary Restraining Order. Mr. Ramirez Lopez's continued detention violates the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause, inflicting ongoing and irreparable harm that no later remedy could undo. Immediate relief is necessary to prevent further unlawful confinement imposed without statutory authority or constitutionally adequate process.

64.     Petitioner therefore asks that the Court: (1) enjoin Respondents from transferring Petitioner out of this District, removing him from the United States, or re-arresting or re-detaining him on the same factual or legal basis while this action is pending; (2) enjoin Respondents from continuing to detain him under 8 U.S.C. § 1225(b); and (3) order his immediate release. In the alternative, should the Court decline to order immediate release, Petitioner requests an individualized custody determination under § 1226(a) within seven (7) days, at which the Government bears the burden of proving by clear and convincing evidence that detention is necessary and that no less restrictive conditions of supervision—such as release

on bond, parole, or electronic monitoring—would reasonably assure appearance and public safety.

65.    Granting this narrowly tailored relief would vindicate fundamental constitutional guarantees, preserve this Court's jurisdiction, and ensure that immigration enforcement proceeds within the statutory limits Congress imposed and the constitutional protections the Fifth Amendment guarantees.

DATED: March 19, 2026

Respectfully Submitted,

Frances Arroyo #276747
Los Angeles Legal Advocates
farroyo@lalegaladvocates.com
1025 W 190th St
Suite 400
Gardena, CA 90248

Natalie Renee Shepherd
Of Counsel
(805) 907-5309
NatalieReneeShepherd@gmail.com

PETITIONER'S NOTICE OF MOTION AND EX PARTE MOTION FOR TEMPORARY
RESTRAINING ORDER

24